**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BURTON WIAND, as
Receiver for EquiAlt
LLC, EquiAlt Fund,
LLC, EquiAlt Fund II,
LLC, EquiAlt Fund III,
EA SIP, LLC,

Plaintiff, Case No.:

v.

ERIK ADAMEK, et al.,

Defendants.
_______________________________/

## COMPLAINT

Burton W. Wiand (the "**Receiver**"), as Receiver for EquiAlt LLC, EquiAlt Fund, LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, EA SIP, LLC, (collectively, the "**EquiAlt Entities**"), by and through his undersigned counsel, hereby files suit against the parties identified in paragraphs 11 through 134 of this complaint (collectively, the "**Defendants**") and alleges as follows:

## INTRODUCTION

1. On February 11, 2020, the Securities and Exchange Commission ("**SEC**") filed a complaint (Doc. 1) against (1) defendants Brian Davison ("Davison"); Barry Rybicki ("Rybicki"); EquiAlt LLC; EquiAlt Fund, LLC; EquiAlt Fund II, LLC; EquiAlt Fund III, LLC; EA SIP, LLC ("collectively "**EquiAlt defendants**") (collectively, the "**defendants**") and (2) relief defendants 128 E. Davis Blvd, LLC; 310 78th Ave, LLC; 551 3rd Ave S, LLC; 604 West Azeele, LLC; 2101 W. Cypress, LLC; 2112 W. Kennedy Blvd, LLC; 5123 E. Broadway Ave, LLC; Blue Waters TI, LLC; BNAZ, LLC; BR Support Services, LLC; Bungalows TI, LLC; Capri Haven, LLC; EA NY, LLC; EquiAlt 519 3rd Ave S., LLC; McDonald Revocable Living Trust; Silver Sands TI, LLC; TB Oldest House Est. 1842, LLC. (collectively, the "**relief defendants**"). The foregoing corporate defendants and relief defendants are referred to as the "**Receivership Entities**." *See S.E.C. v. Brian Davison, et al.*, Case No. 8:20-CV-325-T-35AEP (M.D. Fla.) (the "**SEC Action**").

2. The SEC alleged that the defendants in the SEC Action have violated Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. §§77e(a) and 77e(c); Sections 17(a) of the Securities Act, 15 U.S.C. §77q(a); and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.

§78j(b), and Exchange Act Rule 10b-5,17 C.F. R. §240.10b-5 against all defendants in the SEC action. Additionally, the SEC alleged that Messrs. Davison and Rybicki had violated Section 20(a) of the Exchange Act, 15 U.S.C. §78(t)(a). Finally, the SEC claimed that Davison, Rybicki and EquiAlt LLC had aided and abetted in the violation of Section 15(b) of the Exchange Act. 15 U.S.C. §78(o). Accordingly, the SEC brought the SEC Action seeking the following relief: temporary restraining order, preliminary injunctive relief, permanent injunction, asset freeze, appointment of a receiver, records preservation, sworn accounting, disgorgement, prejudgment interest, and civil money penalties.

3. On February 14, 2020, the Court entered an order appointing Burton W. Wiand as temporary Receiver for the Receivership Entities (Doc. 11) (the "**Order Appointing Receiver**"). The Court directed him, in relevant part, to "[t]ake immediate possession of all property, assets and estates of every kind of the Corporate Defendants and Relief Defendants . . . and to administer such assets as is required in order to comply with the directions contained in this Order." *See id.* at ¶1.

4. On that same date, the Court also entered a Temporary Restraining Order (Doc. 10) imposing a temporary injunction against the defendants and relief defendants, freezing their assets, and required an

accounting from Messrs. Davison and Rybicki related to monies they received from EquiAlt as well as an accounting of all assets and accounts for EquiAlt and the EquiAlt Funds.

5. On July 31, 2020, the Receivership Court held a show cause hearing on the SEC's Preliminary Injunction Motion. On August 18, 2020, the Court entered an order granting the SEC's motion for entry of a preliminary injunction. The Court's Order found that "the evidence shows that the Defendants most likely operated as a Ponzi scheme using new investor funds to pay old investor obligations while simultaneously siphoning funds for their own benefit." (Doc. 184 at 2) Additionally, the Court found that the "Defendants appear to have had equally shared responsibilities and acted in concert to successfully perpetrate the Ponzi scheme." *Id.* at 4.

6. In the Court's Order Appointing Receiver, the Court authorized the Receiver to "[i]nvestigate the manner in which the affairs of the Corporate Defendants and Relief Defendants were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Corporate Defendants and Relief Defendants and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or

unincorporated organizations which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in EquiAlt Fund, LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, LLC, and EA SIP, LLC, their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in EquiAlt Fund, LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, LLC, and EA SIP, LLC; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order." Doc. 11 at ¶2.

7. In an abundance of caution, on January 20, 2021, the Receiver moved the Receivership Court to authorize his filing of "clawback" litigation against investors who received false profits. (Doc. 255) There has been no objection to the motion but the Court has not yet ruled on the motion. The Receiver files this complaint pursuant to the authority granted in the Order Appointing Receiver, the principles governing federal

equity receiverships, and pertinent law, including the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, *et seq.* ("**FUFTA**").

8. The Receiver brings this action to recover monies transferred to each Defendant by Insiders Brian Davison and Barry Rybicki (**"the Insiders"**) through or on behalf of the EquiAlt Entities in an amount that exceeds the amount invested by each Defendant in the EquiAlt Entities. Such excess amounts are generally referred to as "**false profits**" and/or fraudulent transfers because they are not derived from legitimate activity but from money the Ponzi perpetrators stole from other defrauded investors and made in furtherance of the EquiAlt scheme to defraud. The Receiver is entitled to recover the transfers under governing and well-settled law.

## JURISDICTION AND VENUE

9. This court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 754 and 28 U.S.C. § 1692, which provide jurisdiction over receivership property, including money and the individuals in possession of that money, and authorize nationwide service of process. The Receiver has complied with the statutory requirements.

10. Schedules of the false profits or other fraudulent transfers the Receiver seeks to recover from the Defendants are attached to this

complaint as "**Exhibit 1**." The Defendants are arranged in alphabetical order, both below and in Exhibit 1. The total amount of false profits sought to be recovered exceeds $2.8 million in total.

11. On information and belief, defendant Erik W. Adamek is a resident of Clark County, Nevada. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 1.

12. On information and belief, defendant Helen Adamian is a resident of Los Angeles County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 3.

13. On information and belief, defendant Hamlet Adamian is a resident of Los Angeles County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 7.

14. On information and belief, defendant John Allen is a resident of Los Angeles County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 11.

15. On information and belief, defendants Jeffrey Anderson and Cynthia Anderson are residents of Yavapai County, Arizona. The transfers the Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 12.

16. On information and belief, defendant James P. Andriessen is a resident of Lake County, Indiana. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 13.

17. On information and belief, defendant Joan M. Angelosanto is a resident of Middlesex County, Massachusetts. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 14.

18. On information and belief, defendant The Phillip J. and Joyce D. Bach Revocable Trust is a resident of Contra Costa County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 16.

19. On information and belief, defendants James M. and Donna M. Baither are residents of Tarrant County, Texas. The transfers the Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 17.

20. On information and belief, defendant Terry J. Ballard is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 19.

21. On information and belief, defendants James and Ann Bartusek are residents of Yavapai County, Arizona. The transfers the

Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 20.

22. On information and belief, defendant Carla Bates is a resident of Douglas County, Colorado. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 21.

23. On information and belief, defendant Robert W. Bell is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 23.

24. On information and belief, defendants James A. Berv and Sumaya Abuhaidar are residents of Fremont County, Colorado. The transfers the Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 25.

25. On information and belief, defendant David S. Blitz is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 26.

26. On information and belief, defendant Roland Bohrer is a resident of Wetzel County, West Virginia. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 28.

27. On information and belief, defendant Joan Borman is a resident of San Diego County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 29.

28. On information and belief, defendant Silvana Briguglio is a resident of Middlesex County, Massachusetts. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 30.

29. On information and belief, defendant Buckeye Sports & Family Chiropractic Center, Inc. is an Ohio corporation, with its principal place of business in Marysville, Ohio. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 32.

30. On information and belief, defendant Sandra Cable is a resident of Douglas County, Colorado. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 33.

31. On information and belief, defendant Arthur Chamberlain is a resident of Riverside County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 34.

32. On information and belief, defendant Eric D. Chapman is a resident of Los Angeles County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 35.

33. On information and belief, defendant Mikhail Cherner is a resident of Kings County, New York. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 37.

34. On information and belief, defendant Linda Clawson is a resident of Calhoun County, Michigan. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 39.

35. On information and belief, defendant Doug Clouse is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 40.

36. On information and belief, defendant Roy Colosimo is a resident of San Diego County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 42.

37. On information and belief, defendant Deborah A. Cook is a resident of Lake County, Ohio. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 43.

38. On information and belief, defendant Elvira Cooper is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 44.

39. On information and belief, defendant Stephen F. Cooper is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 45.

40. On information and belief, defendant Edmundo P. Cotas is a resident of Contra Costa County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 46.

41. On information and belief, defendants Glenn and Jill Davis are residents of Maricopa County, Arizona. The transfers the Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 48.

42. On information and belief, defendant Ron Doherty is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 49.

43. On information and belief, defendant Hans R. Van Doornum, Jr. is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 51.

44. On information and belief, defendant Eric Drinkwater is a resident of Sedgwick County, Kansas. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 53.

45. On information and belief, defendant Cynthia G. Duckett is a resident of Moore County, North Carolina. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 54.

46. On information and belief, defendant Howard M. Eggers is a resident of New York County, New York. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 56.

47. On information and belief, defendant The Ralph J. Elwood Jr. Living Trust is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at page 58.

48. On information and belief, defendant James Flynn is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 59.

49. On information and belief, defendant David H. Friedman is a resident of Cook County, Illinois. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 60.

50. On information and belief, defendant Virginia R. Furness is a resident of Jefferson County, Colorado. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 62.

51. On information and belief, defendant Lance R. Gilbert is a resident of Westmoreland County, Pennsylvania. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 64.

52. On information and belief, defendant Laurie Ann Gonsoulin is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 65.

53. On information and belief, defendant Lauren K. Grable is a resident of Jackson County, Missouri. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 67.

54. On information and belief, defendant Brian R. Graybill is a resident of Solano County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 70.

55. On information and belief, defendants Shirley A. and Stan J. Hachmann are residents of Chaffee County, Colorado. The transfers the Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 71.

56. On information and belief, defendant The Halstead Family Trust is a resident of Yavapai County, Arizona. The transfers the

Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 73.

57. On information and belief, defendant Harald Hansen is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 76.

58. On information and belief, defendant Carl Michael Herrmann is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 77.

59. On information and belief, defendant Steven Hotchkiss is a resident of Merrick County, Nebraska. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 78.

60. On information and belief, defendant Richard W. Hull is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 79.

61. On information and belief, defendant John M. Hunt is a resident of Jefferson County, Missouri. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 81.

62. On information and belief, defendant John Iverson is a resident of Sandoval County, New Mexico. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 84.

63. On information and belief, defendant Jessmat LLC is a Colorado limited liability corporation. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 85.

64. On information and belief, defendant Freddie N. Jordan is a resident of Washtenaw County, Michigan. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 86.

65. On information and belief, defendant Joseph Financial is a California limited liability company with its principal place of business in San Diego County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 88.

66. On information and belief, defendant Karen Keeney is a resident of Clark County, Nevada. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 89.

67. On information and belief, defendant Raymond W. Kerbaugh is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 91.

68. On information and belief, defendant Norma Kidd is a resident of McLennan County, Texas. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 93.

69. On information and belief, defendant Thomas Krudwig is a resident of Placer County, California The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 94.

70. On information and belief, defendant Marilyn E. Lambe is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 96.

71. On information and belief, defendant Raymond Lemberg is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 99.

72. On information and belief, defendant Daniel Love is a resident of San Diego County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 100.

73. On information and belief, defendant Blake Mahler is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 101.

74. On information and belief, defendant Wanda L. Mathias is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 105.

75. On information and belief, defendant Mary Matook is a resident of Plymouth County, Massachusetts. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 107.

76. On information and belief, defendant Carrol Mauro is a resident of Alameda County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 109.

77. On information and belief, defendant Angela A. McCambridge is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 110.

78. On information and belief, defendant Robert D. Merrill is a resident of Hampden County, Massachusetts. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 111.

79. On information and belief, defendant Cindy M. Merrill is a resident of Mecklenburg County, North Carolina. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 113.

80. On information and belief, defendant James H. Mitchell is a resident of Pima County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 115.

81. On information and belief, defendant Kenneth J. Nowak is a resident of Cook County, Illinois. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 117.

82. On information and belief, defendants David H. and Eugenia M. O'Brien are residents of Jefferson County, Colorado. The transfers the Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 119.

83. On information and belief, defendant Karen O'Connor is a resident of Gwinnett County, Georgia. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 123.

84. On information and belief, defendant Margaret Ogtong is a resident of Bergen County, New Jersey. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 124.

85. On information and belief, defendants Valerie A. and Douglas A. Owen are residents of Yavapai County, Arizona. The transfers the Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 126.

86. On information and belief, defendant Nydia Palomino is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 129.

87. On information and belief, defendants Sudhaker G. and Jyotihka Patel are residents of DuPage County, Illinois. The transfers the Receiver seeks to recover from these defendants are set forth in Exhibit 1 at Page 130.

88. On information and belief, defendant Buster Peeples is a resident of Sunflower County, Mississippi. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page132.

89. On information and belief, defendant Janice Perry is a resident of Clint County, Michigan. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 135.

90. On information and belief, defendant Michael S. Powers is a resident of Prince William County, Virginia. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 137.

91. On information and belief, defendant Frank X. Prestigiovanni Solo K is a resident of Brazoria County, Texas. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 139.

92. On information and belief, defendant Peter H. Reilly is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 141.

93. On information and belief, defendant Pete and Billye A. Reilly Trust is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 144.

94. On information and belief, defendant Josephine F. Reynolds is a resident of Iredell County, North Carolina. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 145.

95. On information and belief, defendant Becky Rohrbacker is a resident of Los Angeles County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 147.

96. On information and belief, defendant Teresa M. Rosental is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 148.

97. On information and belief, defendant Nancy Ross is a resident of Lancaster County, Nebraska. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 149.

98. On information and belief, defendant Anthony Ross is a resident of Lancaster County, Nebraska. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 150.

99. On information and belief, defendant Patricia Rothstein is a resident of Palm Beach County, Florida. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 151.

100. On information and belief, defendant Garr Roudy is a resident of Davis County, Utah. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 152.

101. On information and belief, defendant Lawrence J. Ryan is a resident of Cook County, Illinois. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 154.

102. On information and belief, defendant Rose Rybicki is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 155.

103. On information and belief, defendant Claude H. Schauer is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 156.

104. On information and belief, defendant Kenny R. Schmidt is a resident of Harvey County, Kansas. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 157.

105. On information and belief, defendant Gary Shidaker is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 158.

106. On information and belief, defendant Yaw-Shi Shie is a resident of Santa Clara County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 159.

107. On information and belief, defendant Kathryn S. Shively is a resident of Jefferson County, Ohio. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 162.

108. On information and belief, defendant Thomas W. Simmons is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 163.

109. On information and belief, defendant Simmons and McCambridge Trust is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 164.

110. On information and belief, defendant Charles Sims is a resident of Mobile County, Alabama. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 164.

111. On information and belief, defendant Robert A. Slagoske is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 166.

112. On information and belief, defendant Richard Smisek is a resident of Los Angeles County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 168.

113. On information and belief, defendant Judith Spooner is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 172.

114. On information and belief, defendant Dawn Stallmo is a resident of Riverside County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 176.

115. On information and belief, defendant Scott Stallmo is a resident of Riverside County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 180.

116. On information and belief, defendant Karen Suter-Brady is a resident of San Diego County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 182.

117. On information and belief, defendant Dale Tenhulzen is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 183.

118. On information and belief, defendant Lawrence M. Tiede is a resident of Los Angeles County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 184.

119. On information and belief, defendant Mark Tovar is a resident of San Joaquin County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 186.

120. On information and belief, defendant Tudor Family Living Trust is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 187.

121. On information and belief, defendant Frankie N. Turner is a resident of Mississippi County, Missouri. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 188.

122. On information and belief, defendant Heroldine Ukelson is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 189.

123. On information and belief, defendant Landard G. Ulmer is a resident of Durham County, North Carolina. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 190.

124. On information and belief, defendant Edith Vanicek is a resident of Ventura County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 192.

125. On information and belief, defendant Roy Vermilyea is a resident of Coconino County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page194.

126. On information and belief, defendant Jing-May Wang is a resident of Santa Clara County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 195.

127. On information and belief, defendant David Waxman is a resident of Providence County, Rhode Island. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 196.

128. On information and belief, defendant James A. Wichterman is a resident of Maricopa County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 197.

129. On information and belief, defendant John Wiesner Trust is a resident of Allegheny County, Pennsylvania. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 198.

130. On information and belief, defendant Kathy Wilcox is a resident of Broome County, New York. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 200.

131. On information and belief, defendant Helen Williams is a resident of Riverside County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 201.

132. On information and belief, defendant Walter B. Wooldridge is a resident of Collin County, Texas. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 202.

133. On information and belief, defendant Robrick Wright is a resident of Yavapai County, Arizona. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 203.

134. On information and belief, defendant Mark Zdrojewski is a resident of Orange County, California. The transfers the Receiver seeks to recover from this defendant are set forth in Exhibit 1 at Page 206.

135. The Court has subject matter jurisdiction over this case pursuant to 7 U.S.C. § 13a-1, 28 U.S.C. § 754, and principles of ancillary

or supplemental jurisdiction under 28 U.S.C. § 1367. The Receiver brings this complaint to accomplish the objectives of the SEC Action and the Order Appointing Receiver, and thus this matter is ancillary to the Receivership Court's exclusive jurisdiction over the receivership estate.

136. Venue in this District and Division is proper under 28 U.S.C. § 754, as this proceeding is related to the SEC Action pending in this District, and the Receiver was appointed in this District.

## OTHER PARTIES AND RELATED INDIVIDUALS AND ENTITIES

137. Burton W. Wiand is the duly appointed and acting Receiver for the EquiAlt Entities and other Corporate Defendants and Relief Defendants in the SEC Action. He is a citizen of Florida and a resident of Pinellas County, Florida.

138. EquiAlt, LLC ("**EquiAlt**") is a Nevada limited liability corporation based in Tampa, Florida. Its sole manager is EquiAlt Fund, LLC, also formed in Nevada. Brian Davison served as the owner and CEO of EquiAlt. EquiAlt's primary role was to manage the EquiAlt Funds – EquiAlt Fund, EquiAlt Fund II, EquiAlt Fund III and EA SIP ("**EquiAlt Funds**").

139. EquiAlt Fund ("**Fund I**") is a Nevada limited liability corporation based in Tampa, Florida. Its sole manager is EquiAlt. Fund I

was formed in May 2011. Fund I raised approximately $132.9 million from at least 733 investors from January 2011 through November 2019.

140. EquiAlt Fund II ("**Fund II**") is a Nevada limited liability corporation based in Tampa, Florida. Its sole manager is EquiAlt. Fund II was formed in April 2013. Fund II raised approximately $48.9 million from at least 266 investors from 2013 to November 2019.

141. EquiAlt Fund III ("**Fund III**") is a Nevada limited liability corporation based in Tampa, Florida. Its sole manager was EquiAlt. Fund III was formed in June 2013. Fund III raised approximately $2.55 million from investors from 2013 to December 2015.

142. EA SIP Fund ("**EA SIP**") is a Nevada limited liability corporation based in Tampa, Florida. Its sole manager is EquiAlt. EA SIP was formed in May 2016. EA SIP raised approximately $19.5 million from 138 investors from 2016 to November 2019.

143. Fund I, Fund II, Fund III and EA SIP are creditors of, at minimum, the Insiders under pertinent fraudulent transfer law. The Order Appointing Receiver transferred control of these entities to the Receiver. As such, the Receiver now controls Fund I, Fund II, Fund III and EA SIP which has been cleansed of their former owner's wrongdoing and is thus entitled to the return of fraudulently transferred funds.

144. Brian Davison controlled the Tampa operations for EquiAlt and the EquiAlt Funds. Interest payments on the debentures from the EquiAlt Funds were paid from the EquiAlt Funds' bank at Wells Fargo and/or Bank of America. These bank accounts were controlled by Mr. Davison or those who acted at his direction.

145. Barry Rybicki, resident in the Phoenix/Scottsdale area of Arizona, managed and coordinated the sales force which sold the debentures to the EquiAlt investors. Mr. Rybicki controlled BR Support Services and its predecessor, NV Support Services.

146. After an investment was made in one of the EquiAlt Funds, the particular fund would send 12% of the invested amount to the BR Support Services' account. Rybicki, or those at his direction, would then distribute commission amounts to the sales agents (generally 6% of the invested amount) and BR Support Services (Rybicki) would retain the remaining funds.

147. Rybicki, and the operation in Arizona he managed, were responsible for recruiting the financial advisor agents who dealt with the investors. Almost without exception, these agents were not registered to sell securities. Rybicki and others devised a plan to tell these persons that because they were finders or consultants they did not have to be

registered. While this notion is notoriously inaccurate, on multiple occasions Rybicki and those who worked with him were advised of this fact and chose to ignore the warnings and to continue to willfully and intentionally violate the broker-dealer registration laws.

148. On May 22, 2008, Mr. Davison filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Nevada. He listed approximately $563,000 in liabilities, almost $600,000 in debt, including taxes and delinquent credit card payments. The bankruptcy was discharged on August 25, 2008.

149. Barry Rybicki filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Arizona on October 15, 2008. He had a total of $913,467 of non-priority unsecured debt. The bankruptcy was discharged on January 26, 2009.

150. Despite their bankruptcies, Davison formed EGPP, LLC in December 2009. Davison and Rybicki formed EquityAlt and EquityAlt Fund in May 2010, the precursor entities to EquiAlt and the EquiAlt Funds. Initially EquiAlt was a DBA of EGPP but was later formed as an LLC.

**FACTS COMMON TO ALL CAUSES OF ACTION**

151. The Insiders defrauded investors through their control of the EquiAlt Entities. No investor in the EquiAlt Entities received actual profits from the real estate development touted by the EquiAlt Funds. Many investors never received any interest payments from the EquiAlt Entities, or they received interest in an amount that was less than the amount they invested. As such, each of those investors suffered a net loss.

152. On the other hand, some investors received interest from the EquiAlt Entities and principal redemptions in an amount that exceeded the amount they invested. As such, each of those investors experienced a net gain – *i.e.*, false profits. Whether characterized as interest, growth or return of principal, all transfers to investors were funded exclusively with money stolen from other investors. As such, the Insiders operated the EquiAlt Entities as a classic Ponzi scheme. *See, e.g., Wiand v. Lee*, 753 F.3d 1194, 1201 (11th Cir. 2014) ("A Ponzi scheme uses the principal investments of newer investors, who are promised large returns, to pay older investors what appear to be high returns, but which are in reality a return of their own principal or that of other investors.").

153. The Defendants were among the investors who received false profits. In other words, each Defendant received interest in connection

with the Defendant's investment(s) in one or more of the EquiAlt Entities that exceeded the amount(s) the Defendant invested. The Receiver seeks to avoid these transfers under FUFTA. In the alternative, the Receiver seeks disgorgement of the transfers pursuant to equitable claims of unjust enrichment.

### A. Insiders Operated the EquiAlt Entities as a Common Enterprise

154. Although the Defendants invested in certain of the EquiAlt Funds, there was no meaningful distinction between them. Each of the Funds was managed by EquiAlt and controlled by the Insiders. The EquiAlt Funds were all part of the ongoing and continuous scheme to defraud.

155. The offering materials for each of the Funds were substantially similar.

156. On September 25, 2018, Barry Rybicki sent the following email to certain EquiAlt employees and outside sales agents:

> We are happy to announce that our Fund 1 offering has been filled. We can no longer take investment into Fund 1 as a result of the investment threshold being met. We will however be moving forward with Fund 2 and I have attached the paperwork so please begin to use this paperwork moving forward, I have also attached the banking information just in case you want to use that to make the deposit yourself versus sending the checks in to the office. Just to clarify and answer any potential question, Fund 2 is an identical

> product to Fund 1 and has been in operation since 2013 so there is zero difference between the activities of both funds.

157. These investments were sold without registration with either state or federal regulatory agencies. The offerings were purportedly made pursuant to federal exemptions from registration under the provisions of the Securities Act of 1933 provided in Regulation D. However, none of the first four Receivership Funds qualified for a Regulation D exemption or any other exemption from registration. The offerings appear to be one continuous fraudulent offering of unregistered securities. The lack of any exemption was clear to the perpetrators from the language contained in offering documents delivered to investors.

158. EquiAlt and the EquiAlt Funds shared the same offices and employees, commingled funds, and operated under one overarching name – "EquiAlt."

### B. The Insiders Operated the EquiAlt Entities as a Ponzi Scheme

159. From as early as 2011 through December 2019, the Insiders and others raised over $168 million in 1686 distinct transactions on behalf of one or more of the EquiAlt Entities through the offer and sale of securities, in this case debentures, in the EquiAlt real estate development scheme, as part of a single, continuous Ponzi scheme (the "**scheme**").

160. In relevant part, the Insiders and others represented to investors and potential investors that their money would be used to purchase and renovate revenue-generating real estate properties in distressed real estate markets.

161. The investments sold were three or four year debentures of the various EquiAlt Funds providing a fixed annual income of 8-10%. Later, EquiAlt offered a “growth” option, wherein no interest was paid but rather the investment, on paper, was “growing” at the advertised rate. In fact, the investment was not growing at all.

162. Insiders and others fraudulently marketed investments in the EquiAlt Funds as “secure,” “safe,” “low risk,” and “conservative.”

163. Upon information and belief, investors transferred money to the EquiAlt Entities based on these representations.

164. Investors were never told that their interest payments were dependent upon funds raised from future investors.

165. EquiAlt did not disclose the personal bankruptcies of the Insiders.

166. Further, although the offering materials stated that commissions may be paid, in fact, commissions were always paid in the range of 10-14%.

167. The offering materials indicated that 90% of the investors' funds would be invested in real estate when in fact that was factually impossible given the amount of commissions being paid on the investments. Over time, less that half of the money actually raised was invested in real estate.

168. The offering materials presented no financial information and did not accurately or fully describe the methods and fees that were used to bleed money from the Receivership Funds for the use by Rybicki and Davison. As an example, there was no disclosure of any loans or monies owed by the Funds to either Davison or Rybicki, yet:

a. Fund I paid $3,435,000 to Mr. Rybicki allegedly for "Principle [sic] Reduction." He also received a $250,000 bonus from Fund II.
b. Mr. Davison received $4,660,250 from Fund I for "Principle [sic] Return" or "Principle [sic] Reduction." He received more than $3,060,000 from Fund II for similar purposes.
c. McDonald Revocable Living Trust of which Brian Davison was the trustee received $2,100,000 from Fund I and $1,800,000 from Fund II also for "Principle [sic] Return" or distributions.

169. Never during the life of these EquiAlt Funds were revenues from the rental of real properties or other sources (other than investor

funds) sufficient to meet the overwhelming debt service obligations that were being created by the debentures that were being sold. This was not disclosed to the investors at the time they invested nor at any time through the operation of the EquiAlt Funds.

170. The representations made by EquiAlt, were patently false, and in fact (a) tens of millions of dollars raised were used for Ponzi payments and unauthorized personal and business expenses; (b) investor returns were completely fraudulent and funded by Ponzi payments of new investor money repaying older investors; (c) the EquiAlt Funds were never profitable and consistently operated in the red; (d) returns were not from rental income, but were, again, Ponzi payments of new investor money repaying older investors.

171. In truth, the EquiAlt Entities derived their assets from investors' principal investments, which were commingled on numerous occasions.

172. Specifically, the Receiver's forensic accountants have conducted an analysis of the income generated from operations (i.e. rental income, etc.) compared to commissions and interest paid on the Fund's investments. From the outset of operations, the EquiAlt entities never

generated enough operational revenue to cover the expenses of the EquiAlt scheme.

173. The overwhelming source of inflows to the accounts for the EquiAlt Funds appears to have been money, directly or indirectly, from defrauded investors.

174. The Insiders transferred millions of dollars from EquiAlt and the EquiAlt Funds to the Insiders or to others on behalf of the Insiders.

175. The Insiders transferred more than $18 million dollars from the EquiAlt Entites through BR Support Services to various sales agents to pay undisclosed commissions directly from the investors' investments.

176. The Insiders transferred millions of dollars to investors from the EquiAlt Funds' accounts, including the Defendants here, despite the lack of any profits generated from the EquiAlt scheme. In other words, the Insiders used investor money to make payments to other investors as the operational revenues of the EquiAlt properties were not sufficient to pay interest payments to the existing investors. Again, that is the definition of a Ponzi scheme.

177. As an example, in 2019, for Fund I, there was $4,745,388.53 in non-investor funds received but yet Fund I paid out distributions (interest and redemptions) of $13,392,271.34 to Fund I investors. The delta of these

two numbers - $8,646,882.81 – could only come from one source – new investment monies. Thus almost 65% of distributions made to investors came from new investor money.

178. The EquiAlt Entities' financial performance as represented to investors and potential investors from the inception of the scheme were false and were based on fabricated numbers created by the Insiders. The true financial results of the EquiAlt business was reported to investors or potential investors.

179. From 2012 to 2019, the Insiders caused the EquiAlt Funds to pay $20,824,767 in fees ("**Fees**") to EquiAlt. These fees were couched in various ways – management, commission, discount, due diligence, advertising/marketing, and placement fees. The Fees went to EquiAlt LLC, which was nothing but an ATM for Mr. Davison. From EquiAlt, Mr. Davison received $1,702,000 in salary and $2,617,388 in non-salary. Additionally, EquiAlt paid more than $15 million on Mr. Davison's behalf, for cars, watches, property improvements and credit card payments to name a few.

180. These Fees were based on arbitrary valuations and percentages and were not reflective of services provided rather it allowed

for the Insiders to improperly and wrongfully divert money from the EquiAlt Entities.

181. The Insiders were responsible for the EquiAlt Funds paying BR Support Services ("**BRSS**"), Mr. Rybicki's company, over $24 million. Although BRSS paid commissions to sales agents from this money, Mr. Rybicki still received $2,031,944 directly from BRSS and BRSS paid $6,749,644 on behalf of Mr. Rybicki.

182. Aside from paying Fees, the Insiders caused the EquiAlt Entities to make transfers to investors that the operations and performance of the EquiAlt Entities never supported. Through those transfers, the Insiders improperly and wrongfully diverted money from the EquiAlt Entities.

183. Similarly, following requests from investors for redemptions of their principal investments, the Insiders intentionally and wrongfully caused the EquiAlt Entities to pay relevant investors sums of money that were equivalent to all or part of the principal invested by those investors.

184. For investors who did not request distributions, interest amounts were "credited" to the investors' purported accounts with the EquiAlt Entities. These fictitious profits were likewise unsupported by

the EquiAlt Entities' investment performance and only served to further increase the EquiAlt Entities' insolvency.

185. These (and all other) transfers that the Insiders caused the EquiAlt Entities to make to investors were paid from the fruits of the scheme. Specifically, they were largely paid from: (1) principal investment money from new investors; (2) existing investors' principal investment money; and (3) additional principal investment money from existing investors.

186. These distributions were not distributions of earned revenues or of the investors' principal investments. Indeed, the ventures were not profitable. Distributions, withdrawals and redemptions were dependent on newly invested funds.

187. Because the "account statements" and investor website did not reflect the true nature of the Insiders' and the EquiAlt Entities' activities, by intentionally and wrongfully causing the EquiAlt Entities to pay those amounts to investors, the Insiders improperly diverted assets of the EquiAlt Entities to perpetuate the scheme.

188. The investors relied upon the fictitious interest and growth purportedly achieved by the Insiders and the purported payment of principal redemptions upon request to make additional investments with

the Insiders and the EquiAlt Entities and to refer friends, family, and business colleagues to do the same.

189. The principal investment money from new investors, the existing investors' principal investment money, and the existing investors' additional principal investment money should have been used for the stated purpose of the EquiAlt Entities' business, which was to purportedly conduct and manage the business of legitimate real estate investment funds.

190. The EquiAlt Entities were harmed by this unauthorized course of conduct, which was effectuated by the Insiders through the EquiAlt Entities in furtherance of the scheme. This conduct dissipated assets of the EquiAlt Entities.

191. The negative cash flow of the EquiAlt Entities made the eventual collapse of the scheme inevitable.

### C. Transfers To The Defendants

192. The Defendants were investors in one or more of the EquiAlt Entities and received interest and/or principal redemptions in an amount which exceeded each Defendant's principal investment. While the Defendants and other investors received false profits, many more investors in the EquiAlt Entities lost money.

193. Specifically, as detailed in Exhibit A attached hereto and incorporated herein, based on the records reviewed by the Receiver as of the filing of this complaint, between 2011 and 2020, the Insiders caused one or more of the EquiAlt Entities and their fund administrator to pay purported interest and/or purported principal redemptions to each Defendant. These transfers are itemized in Exhibit A, which details the date and amount of each such transfer and the bank account from which the transfer was paid.

194. Further, as detailed in Exhibit A, based on the records reviewed by the Receiver as of the filing of this complaint, between 2013 and 2019, most Defendants invested an amount in one or more EquiAlt Entities. Those investments are itemized in Exhibit A, which details the date and amount of each such deposit and the bank account to which each deposit was made.

195. Also as detailed on Exhibit A, in light of those deposits and transfers, the distributions to each Defendant exceeded the Defendant's deposits. The amount of that excess represents the Defendant's false profits or otherwise avoidable transfers, which is itemized on Exhibit A. Each Defendant's false profits or otherwise avoidable transfers (whatever

the final amount is determined to be following discovery) is the amounts the Receiver seeks to recover in this suit.

196. To allow the Defendants to keep their false profits would be inequitable and unjust, including to the investors in the EquiAlt Entities as a whole.

197. All money the Insiders wrongfully caused the EquiAlt Entities to transfer or pay to the Defendants was diverted and misappropriated by the Insiders in furtherance of the scheme. Thus, all the monies transferred or paid to the Defendants were improperly diverted assets of one or more of the EquiAlt Entities. These payments to investors were a necessary and important part of the Insiders' scheme and allowed them to create the façade that EquiAlt was a bona fide investment business.

## COUNT I

### Florida Statutes § 726: Uniform Fraudulent Transfer Act
### False Profits

198. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 197.

199. Because the Insiders intentionally and wrongfully caused the transfer to the Defendants of investors' commingled principal investment money in an amount equivalent to each Defendant's false profits from one or more of the EquiAlt Entities as identified in Exhibit A under the

circumstances alleged in this complaint, the EquiAlt Entities, through the Receiver, have a right to repayment of at least that amount from each Defendant.

200. In light of this right to repayment (and independently because the Insiders' conduct alleged in this complaint with respect to the EquiAlt Entities amounted to embezzlement, breach of fiduciary duty, breach of contract, fraud, and/or other violations of law), the EquiAlt Entities have a claim against the Insiders and consequently are creditors of the Insiders under FUFTA. Accordingly, the Insiders are debtors under that act.

201. The transfers of false profits that the Insiders caused the EquiAlt Entities to make to each Defendant were inherently fraudulent because the transfers were made as part of the scheme.

202. Those transfers were fraudulent under Florida Statutes § 726.105(1)(a) because the Insiders caused EquiAlt Entities to make the transfers with actual intent to hinder, delay, or defraud creditors of the Insiders and/or the EquiAlt Entities.

203. Those transfers also were fraudulent under Florida Statutes § 726.105(1)(b) because: (a) the Insiders caused EquiAlt Entities to make those transfers; and (b)(i) the Insiders and the EquiAlt Entities were engaged or were about to engage in a business or transaction for which

their remaining assets were unreasonably small in relation to the business or transaction; or (ii) the Insiders intended that they and/or the EquiAlt Entities incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

204. Those transfers also were fraudulent under Florida Statutes § 726.106(1) because neither the Insiders nor the EquiAlt Entities received a reasonably equivalent value in exchange for those transfers to each Defendant, and the Insiders and the EquiAlt Entities were insolvent at all relevant times.

205. On behalf of the EquiAlt Entities from which money was transferred to each Defendant as identified in Exhibit A, the Receiver is entitled to avoid and recover transfers equal to the amount of false profits that the Insiders caused those EquiAlt Entities to make to each Defendant (and to any other pertinent remedy, including those available under Florida Statutes § 726.108).

206. On behalf of the other EquiAlt Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the EquiAlt Entities and (ii) the Insiders used the EquiAlt Entities as a single, continuous scheme.

WHEREFORE, the Receiver asks this Court to enter judgment against each Defendant avoiding transfers from the EquiAlt Entities in the amount of each Defendant's false profits, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT II

### Unjust Enrichment
### False Profits

207. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 197.

208. This unjust enrichment claim is asserted in the alternative, in the event the statutory remedy asserted in Count I does not provide an adequate remedy at law.

209. Each Defendant received a benefit when during the course of the scheme, the Insiders wrongfully caused EquiAlt Entities to transfer money to each Defendant in an amount equal to each Defendant's false profits.

210. Each Defendant knowingly and voluntarily accepted and retained a benefit in the form of those false profits.

211. The circumstances alleged in this complaint render each Defendant's retention of that benefit inequitable and unjust, including to the investors of the EquiAlt Entities as a whole, so each Defendant must pay the Receiver, acting on behalf of the EquiAlt Entities, the value of the benefit received.

212. Each Defendant has been unjustly enriched at the expense of the EquiAlt Entities (and, ultimately, their investors) in the amount of each Defendant's false profits, and the EquiAlt Entities, through the Receiver, are entitled to judgments in the amount of those false profits.

213. The Receiver, on behalf of the EquiAlt Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, the Receiver asks this Court to enter judgment against each Defendant in the amount of each Defendant's false profits, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

Dated: February 13, 2021

Respectfully submitted,

s/ **Katherine C. Donlon**
Katherine C. Donlon, FBN 0066941
kdonlon@guerraking.com
Jared J. Perez, FBN 0085192
jperez@guerraking.com
R. Max McKinley, FBN 119556
mmckinley@guerraking.com
GUERRA KING P.A.
5505 West Gray Street
Tampa, Florida 33609
Tel.: (813) 347-5100
Fax: (813) 347-5189

*Counsel for Burton W. Wiand Receiver*