UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver
for EquiAlt LLC, EquiAlt Fund, LLC,
EquiAlt Fund II, LLC, EquiAlt Fund III,
EA SIP, LLC,

    Plaintiff,

v.                                             Case No. 8:21-cv-360-JLB-CPT

ERIK ADAMEK, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before me on referral is *Plaintiff Receiver [Burton W. Wiand]'s Second Renewed Omnibus Motion for Default Judgment against Defaulted Defendants* (Doc. 495). For the reasons set forth below, I respectfully recommend that Wiand's motion be granted.

I.

This suit stems from a fraudulent real estate development scheme operated by Brian Davison and Barry Rybicki (Insiders) through EquiAlt LLC, EquiAlt Fund, LLC, EquiAlt Fund II, LLC, EquiAlt Fund III, and EA SIP, LLC (collectively, EquiAlt Entities). (Doc. 1 at ¶¶ 1, 152). According to the complaint filed in this action, from 2011 through 2019, the Insiders and others raised over $168 million on behalf of

the EquiAlt Entities through the offer and sale of securities. *Id.* ¶ 159. The Insiders did so in part by representing to investors that their money would be used to purchase and renovate revenue-generating properties in distressed real estate markets. *Id.* ¶¶ 159, 160. These investors were never told, however, that the return on their investment was actually dependent upon additional funds being raised from other investors. *Id.* ¶¶ 164, 169. To that end and to maintain their illicit enterprise, the Insiders generally solicited new investors to pay the older investors so that it appeared to the latter group that the EquiAlt properties were generating interest payments. *Id.* ¶¶ 176, 177. Ultimately, although some investors secured payments exceeding the amount they put in, no investors received true "profits," and many investors received either no interest payments at all or interest payments totaling less than what they contributed. *Id.* ¶¶ 151, 152. This fraudulent conspiracy, Wiand maintains, amounted to a "classic Ponzi scheme."[1] *Id.*

In February 2020, the Securities and Exchange Commission (SEC) brought an enforcement action against the Insiders and others in the matter captioned *Securities and Exchange Commission v. Brian Davison, et al.*, No. 8:20-cv-325-MSS-MRM (M.D. Fla.). (Doc. 495-1 at 3). Not long after, the *Davison* court appointed Wiand as the Receiver for the EquiAlt Entities. *Id.* In doing so, the court instructed Wiand, *inter alia*, to "[i]nvestigate the manner in which the affairs of [certain defendants] were

---

[1] "A Ponzi scheme uses the principal investments of newer investors, who are promised large returns, to pay older investors what appear to be high returns, but which are in reality a return of their own principal or that of other investors." *Wiand v. Lee*, 753 F.3d 1194, 1201 (11th Cir. 2014) (citation omitted).

conducted" and, where appropriate, to "seek[ ] imposition of constructive trusts, disgorgement of profits, [and] recovery and/or avoidance of fraudulent transfers[.]" (Doc. 495-1 at 21).

In accordance with this directive, Wiand commenced the instant litigation—known as a "claw back action"—approximately one year later. (Doc. 1). Wiand originally named in his complaint one hundred and twenty-four Defendants who had invested in one or more of the EquiAlt Entities. *Id.* ¶ 153; (Doc. 495 at 14). According to Wiand, the named Defendants were paid interest in connection with their investments that surpassed what they had invested and therefore "experienced a net gain—*i.e.*, false profits." (Doc. 1 at ¶¶ 152, 153). To recover these "false profits," Wiand asserted claims against these Defendants for actual and constructive fraud under the Florida Uniform Fraudulent Transfer Act (FUFTA), as well as an alternative claim for unjust enrichment. *Id.*

While certain of the Defendants responded to Wiand's complaint, a number of them did not, resulting in those Defendants being defaulted by the Clerk of Court. *See* (Doc. 495-1 at 3–14). Wiand then moved for a default judgment against the defaulted Defendants (Doc. 433), although he later voluntarily dismissed his claims against several of them (Docs. 436, 439, 453, 455). Wiand additionally moved for summary judgment against the Defendants who had not defaulted. (Doc. 416).

In June 2023, the Court denied Wiand's motion for default judgment without prejudice on the grounds that the claims asserted against the defaulted Defendants were also the subject of Wiand's summary judgment motion against the non-defaulted

3

Defendants. (Doc. 462). As the Court pointed out in its Order, the "preferred practice" under such circumstances is to withhold granting a default judgment against the defaulted defendants until there is an adjudication on the merits as to the non-defaulted defendants. *Id.* (citing *N. Pointe Ins. Co. v. Global Roofing & Sheet Metal, Inc.*, 2012 WL 5378826, at *4 (M.D. Fla. Sept. 4, 2012) (citations omitted)); (Doc. 462). Not long after, the Court awarded summary judgment to Wiand on his claims against the non-defaulted Defendants and directed that judgment be entered against them. (Doc. 469)

Wiand subsequently renewed his motion for a default judgment against the defaulted Defendants. (Doc. 478). The Court denied that motion without prejudice in October 2023 because it was unclear whether Wiand had properly served certain of the targeted Defendants, including those that were trusts and those that were served by way of substitute service. (Doc. 492).

The instant motion for a default judgment, filed in November 2023, followed. (Doc. 495). Pertinent to the concerns expressed by the Court in its October 2023 Order, Wiand sets forth in his motion how each of the defaulted Defendants was either personally served, served by substitute service, or waived service, and he also explains that he dismissed two of the defaulted Defendants which were trusts—namely, Defendant Pete and Billye A. Reilly Trust and Defendant Phillip J. and Joyce D. Bach Revocable Trust. *Id.* at 3–8, n.1.

After careful review, the Court issued an Order in December 2023 directing Wiand to submit a supplemental brief within roughly ten days addressing the

4

sufficiency of his averment under the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. § 3901 *et seq.* that "[u]pon information and belief, none of the [d]efaulted Defendants [were] an infant, an incompetent person, or *an active-duty member of the U.S. Military*" (Doc. 501) (emphasis added) (citing *Alexander Produce, Inc. v. DGR Sales, LLC*, 2022 WL 2869653, at *1 (M.D. Fla. July 21, 2022) (deeming a similar declaration to be inadequate under the SCRA)); 50 U.S.C. § 3931(b)(1)). The Court also instructed Wiand to address whether the method used to serve defaulted Defendants David Waxman and Gary Shidaker complied with the applicable law. (Doc. 501) (citing *Morancy v. Salomon*, 2023 WL 4082117, at *2 (M.D. Fla. June 20, 2023)). And lastly, the Court told Wiand to provide the Court with evidence showing that another defaulted Defendant, the Tudor Family Living Trust, was properly served. *Id.* Wiand thereafter timely submitted a supplemental brief in accordance with the Court's December 2023 Order. (Doc. 502).

In the meantime, none of the defaulted Defendants responded to Wiand's motion, and their time for doing elapsed. *See* M.D. Fla. R. 3.01(c). The motion is therefore now ripe for the Court's consideration.

## II.

Federal Rule of Civil Procedure 55 provides that where, as here, a clerk's default has been entered, a plaintiff may apply to either the clerk or the court for the entry of a default judgment. Fed. R. Civ. P. 55(b). Prior to granting such relief, however, a court must "ensure that it has jurisdiction over the claims and parties." *Wagner v. Giniya Int'l Corp.*, 2020 WL 7774385, at *1 (M.D. Fla. Dec. 3, 2020), *report and*

*recommendation adopted*, 2020 WL 7768949 (M.D. Fla. Dec. 30, 2020). Part of this inquiry requires a court to confirm that the defendant which is the subject of the default judgment has been properly served with the complaint. *Opella v. Rullan*, 2011 WL 2600707, at *4 (S.D. Fla. June 29, 2011) ("Insufficient or improper service of process cannot support the entry of a default judgment, even if the defendant has actual notice of the suit."), *report and recommendation adopted*, 2011 WL 13220496 (S.D. Fla. Aug. 9, 2011).

If jurisdiction is established, a court must then ascertain whether "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The burden on the movant in this context is akin to the one borne by a party seeking to defeat a motion to dismiss for failure to state a claim. *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) ("The requisite factual showing for a default judgment is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim.") (per curiam) (citing *Surtain*, 789 F.3d at 1245);[2] *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted). Thus, a court looks to see whether the complaint contains adequate factual averments, which—if accepted

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

as true—state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

If a claim is properly pleaded, a court must then address the issue of damages. A court may conduct an evidentiary hearing on that question, Fed. R. Civ. P. 55(b)(2)(B), but need not do so where the sought-after damages constitute a liquidated sum, are capable of mathematic calculation, or "where all essential evidence is already of record," *Secs. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (citation omitted); *see also Perry Ellis Int'l, Inc. v. URI Corp.*, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007) (observing that a court may grant statutory damages which are predicated "upon affidavits and other documentary evidence if the facts are not disputed"); *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (finding that a hearing was unnecessary where the plaintiff requested statutory damages and "attached detailed declarations with accompanying documentary evidence" to its motion for a default judgment). Resolution of the damages issue is ultimately left to a court's sound discretion. *Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 775 (11th Cir. 2014); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 912 (11th Cir. 2011) (per curiam).

Each of these issues—jurisdiction, liability, and damages—will be addressed in turn.

A.

There is little question that the Court has subject matter jurisdiction over Wiand's claims. As noted above, Wiand filed this clawback action in his capacity as

the Receiver selected by the *Davison* court in the SEC proceeding to carry out the tasks assigned to him. (Doc. 1). A receiver appointed in such an action is vested under federal law "with complete jurisdiction and control of all property [involved in the matter] with the right to take possession thereof" and is also authorized "to sue in any district without ancillary appointment." 28 U.S.C. § 754.

There is likewise little question that the Court has personal jurisdiction over the defaulted Defendants. The concept of personal jurisdiction is comprised of two distinct components: amenability to jurisdiction and service of process. *Prewitt Enters., Inc. v. Org. of Petrol. Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003) (quoting *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)). "Amenability to jurisdiction" means that a particular defendant is within the substantive reach of the court's jurisdiction under the governing law. *DeMelo*, 711 F.2d at 1264 (citation omitted). Service of process, on the other hand, "is simply the physical means by which that jurisdiction is asserted." *Id.* (citation omitted).

As for amenability to jurisdiction, the Court has jurisdiction by federal statute over the receivership property, including both the money and the individuals in possession of such funds. 28 U.S.C. § 754. And "in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district." 28 U.S.C. § 1692. The Court thus has "substantive reach" over the defaulted Defendants under the governing law. *See DeMelo*, 711 F.2d at 1264; *see also Quilling v. Cristell*, 2006 WL 316981, at *1 (W.D.N.C. Feb. 9, 2006) ("The *in*

8

*personam* jurisdiction of a [c]ourt in a federal equity receivership proceeding is not governed by traditional minimum contacts analysis argued by [d]efendants. In cases involving federal equity receiverships, the receivership court acquires nationwide jurisdiction based on the interplay of 28 U.S.C. § 754 and 28 U.S.C. § 1692.") (collecting cases).

With respect to service of process, Federal Rule of Civil Procedure 4 provides that an individual may be served by giving a copy of the summons and complaint to the individual personally; leaving a copy of the summons and complaint with an age-appropriate person who lives at the individual's "dwelling or usual place of abode;" or by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e).[3] Although Rule 4 requires that a plaintiff file proof that service on a defendant has been effectuated, such proof is not necessary where a defendant waives service of process at the plaintiff's request, Fed. R. Civ. P. 4(d)(1), (d)(4), (l)(1).

In this case, as indicated above, Wiand has demonstrated that service on the majority of the defaulted Defendants occurred either by waiver,[4] by personal service,[5] or by leaving a copy of the summons and complaint at the Defendants' dwelling with

---

[3] Rule 4 additionally allows for service by delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). This provision is not implicated here, however, because Wiand did not employ this method of service.

[4] *See* (Docs. 93, 94, 96, 101, 102, 109, 113, 114, 117, 118, 123, 127, 161); (Doc. 495-1 at ¶ 6).

[5] *See* (Docs. 130, 144, 152, 157, 163, 168, 186, 207, 210, 211, 223, 224, 352, 364); (Doc. 495-1 at ¶ 7). Wiand served Defendant Tudor Family Living Trust by personally serving Audrey Tudor as successor trustee. *See* (Docs. 502, 502-6, 502-7, 502-8).

an appropriate co-resident.⁶ Fed. R. Civ. P. 4(e)(2)(A), (B); Fed. R. Civ. P. 4(d); (Doc. 495 at 3–8). And in response to the Court's December 2023 Order, Wiand has also tendered an affidavit establishing that he complied with the SCRA by searching the SCRA database and determining that none of the defaulted Defendants are active-duty members of the United States Military. (Doc. 502-1).

The issue of service of process relative to Defendants Waxman and Shidaker, however, requires a more extended discussion. To establish that these Defendants were properly served, Wiand relies on section 48.031(6)(a) of the Florida Statutes, which states that "[i]f the only address for a person to be served which is discoverable through public records is a private mailbox[,] . . . substituted service may be made by leaving a copy of the process with the person in charge of the private mailbox . . . but only if the process server determines that the person to be served maintains a mailbox . . . at that location." Fla. Stat. § 48.031(6)(a); *see also* (Doc. 495 at 7–8). By its terms, section 48.031(6)(a) therefore applies solely to those situations where (1) the address of the private mailbox is the lone address "discoverable through the public records, and (2) the process server determines that the person to be served maintains a mailbox at that location.'" *Morancy*, 2023 WL 4082117, at *2 (quoting *ViSalus, Inc. v. Then*, 2013 WL 3682239, at *2 (M.D. Fla. July 12, 2013)).

Here, with respect to Waxman, Wiand represents that service was effectuated by leaving the documents with the manager at MailBoxes Plus where the process

---

⁶ *See* (Docs. 180, 184, 209, 222, 365); (Doc. 495-1 at ¶ 8).

server confirmed Waxman held an "active box." (Doc. 495 at 8). Wiand further represents that the process server was unable to discover any other address for Waxman. (Doc. 502 at 2–3); (Doc. 502-2). Wiand similarly avers that Shidaker was served "by leaving the documents with the person in charge at the UPS Store[,] which was the last address [Wiand] had for" Shidaker (Doc. 495 at 8); (Doc. 138) and which was where the process server was told Shidaker was then receiving mail (Doc. 495-5). The process server likewise could not track down another address for Shidaker either. (Doc. 502 at 3); (Docs. 502-1, 502-4, 502-5). I find these attestations to be sufficient to meet the requirements of section 48.031(6)(a).

In light of the above, I find that the Court has jurisdiction over both the claims and the parties.

B.

Turning to the issue of liability, as alluded to earlier, Wiand asserts claims against the Defendants under the actual and constructive fraud provisions of FUFTA, Fla. Stat. §§ 726.105(1)(a), (b) and 726.106(1), and for unjust enrichment under Florida common law. (Doc. 1). The Court previously determined that Wiand adequately alleged causes of action under FUFTA and for unjust enrichment in denying a motion to dismiss brought by a number of the Defendants. *See* (Doc. 350). In the interest of completeness, however, I will review the elements of these claims here, beginning with FUFTA.

As one court has observed, "[f]ederal district and bankruptcy courts adopt a largely uniform practice allowing receivers to bring suits under [the Uniform

11

Fraudulent Transfer Act (UFTA)] against [P]onzi scheme investors to the extent that investors have received payments in excess of the amounts invested and those payments are avoidable as fraudulent transfers." *Wiand v. Morgan*, 919 F. Supp. 2d 1342, 1354 (M.D. Fla. 2013) (citing *Donnell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008)). The justification for this approach is that the "innocent 'winners'" of a Ponzi scheme should not enjoy an advantage over the later investors "who were not so lucky." *Id*. (quoting *Donnell*, 533 F.3d at 770). Like the UFTA schemes enacted by other states, Florida's version—FUFTA—authorizes a receiver to proceed under the theories of actual fraud or constructive fraud. *Id*. (citations omitted).

Regarding the first of these theories (i.e., actual fraud), the FUFTA states, in pertinent part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Fla. Stat. § 726.105(1)(a). To establish actual fraud under this provision, there must be (1) "a creditor to be defrauded," (2) "a debtor intending fraud," and (3) "a conveyance of property which is applicable by law to the payment of the debt due." *Lee*, 753 F.3d at 1199–2000 (quoting *Johnson v. Dowell*, 592 So. 2d 1194, 1196 (Fla. Dist. Ct. App. 1992)).

With respect to the first requirement of a defrauded creditor, Wiand avers that the Insiders transferred millions of dollars to investors from the EquiAlt Funds'

12

accounts, including to the defaulted Defendants, by diverting those funds from their lawful purpose. (Doc. 1 at ¶¶ 176, 182). As a result, Wiand maintains that, as the Receiver, he is a creditor of the Insiders under FUFTA, while the Insiders are debtors and the defaulted Defendants are third-party transferees who received false profits. *Id.* ¶¶ 199–201; *see also* (Doc. 469 at 9) (asserting that, in this case, "the Receiver is the creditor, the Insiders are the debtors, and Defendants are the third-party transferees from whom the Receiver seeks to recover"); *Lee*, 753 F.3d at 1202–03. These allegations satisfy the defrauded creditor element. *Lee*, 753 F.3d at 1200–04; *see also Morgan*, 919 F. Supp. 2d at 1354–55.

As for the "debtor intending fraud" prong, courts in Florida ordinarily look to the statutory "badges of fraud" identified in section 726.105 of the Florida Statutes in determining whether a transfer was made with fraudulent intent. Fla. Stat. § 726.105(2)(a)–(k). Under FUFTA, however, "proof that a transfer was made in furtherance of a Ponzi scheme establishes [such] intent . . . without the need to consider" these factors. *Lee*, 753 F.3d at 1201; *see also Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011) (noting that "[w]ith respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud") (citations omitted). Since the complaint here avers that the Insiders made the transfers

13

at issue in furtherance of a Ponzi scheme[7] (Doc. 1 at ¶¶ 176–78), the Insiders' actual intent to defraud is sufficiently alleged, *Lee*, 753 F.3d at 1201; *Perkins*, 661 F.3d at 626.[8]

Relative to the third prong that there be "a conveyance of property which is applicable by law to the payment of the debt due," the Eleventh Circuit's decision is *Lee* is instructive. *Lee*, 753 F.3d at 1199–1200. In that case, the orchestrator of a Ponzi scheme, Nadel, convinced investors to open trading accounts with certain hedge funds based on misrepresentations as to the funds' assets and the returns the investors would receive. *Id.* at 1197. Contrary to what he promised, however, "Nadel primarily used the principal funds of new and existing investors to benefit himself and to pay distributions to older investors in order to maintain the appearance that the [funds] were generating profits through legitimate investment activities, thus enabling him to attract new investors." *Id*. at 1197–98. The scheme eventually collapsed, and Nadel was ultimately convicted of various forms of fraud. *Id*. at 1198.

The Eleventh Circuit found that the "conveyance of property" requirement was satisfied in *Lee*, reasoning:

---

[7] Notably, the Insiders consented to Final Judgments against them for operating a Ponzi scheme. (Docs. 495-2, 495-3).

[8] Wiand argues that although FUFTA provides an affirmative defense to investors "who took [a transferred asset] in good faith and for a reasonably equivalent value," Fla. Stat. § 726.109(1); (Doc. 495 at 20–21), the defaulted Defendants failed to assert this defense (or any other affirmative defenses for that matter) and have therefore waived their right to do so. I agree. *See SunTrust Bank v. Griffith*, 2010 WL 11647408, at *2 (M.D. Fla. Oct. 28, 2010), *report and recommendation adopted*, 2011 WL 13319471 (M.D. Fla. 2011). In any event, as discussed *infra*, the complaint demonstrates that the defaulted Defendants did not take the false profits they received for reasonably equivalent value. *See* (Doc. 1 at ¶ 204); *see also Perkins*, 661 F.3d at 627 ("Any transfers over and above the amount of the principal—*i.e.,* for fictitious profits—are not made for 'value' because they exceed the scope of the investors' fraud claim and may be subject to recovery by a plan trustee.") (citations omitted).

14

> This element is established because the funds that Nadel controlled and transferred to investors could have been applied by him to pay the debt he owed to the receivership entities as a result of his use of funds to perpetrate a Ponzi scheme. With each transfer that Nadel made, Nadel became a debtor of the receivership entities because he diverted the funds from their lawful purpose in violation of his fiduciary duties and was thus obligated to return those same funds to the entities to be used for the benefit of the investors. Therefore, with each transfer, Nadel diverted property that he controlled and that could have been applicable to the debt due, namely, the very funds being transferred.

*Id*. at 1203. Under the reasoning in *Lee*, the third element of FUFTA's actual fraud provision is met here. As a result, a default judgment on Wiand's actual fraud claim is warranted.

FUFTA also codifies the theory of constructive fraud, which authorizes a receiver—as a creditor—to avoid a debtor's fraudulent transfer without regard to the debtor's intent. *Virtus Pharmaceuticals, LLC v. Woodfield Distribution, LLC*, 2023 WL 6048794, at *7 (M.D. Fla. Apr. 25, 2023) (citations omitted). A claim for constructive fraud under FUFTA is proven if the creditor shows that the debtor made the transfer "without receiving a reasonably equivalent value in exchange," and the debtor was engaged in a business for which its remaining assets were unreasonably small in relation to the transaction, or it reasonably believed that it would incur debts beyond its ability to pay. Fla. Stat. § 726.105(1)(b); *see also SE Prop. Holdings, LLC v. Welch*, 65 F. 4th 1335, 1349 (11th Cir. 2023) (citing Fla. Stat. § 726.105(1)(b)); *Virtus*, 2023 WL 6048794, at *7 (citations omitted). Further, a transfer is considered to be constructively fraudulent as to a creditor if the debtor made the transfer "without receiving reasonably

15

equivalent value in exchange" and the debtor was insolvent or became insolvent because of the transfer. Fla. Stat. § 726.106(1).

A determination of whether a debtor received reasonably equivalent value in exchange for a transfer normally requires a court to "determine the value of what was transferred and compare it to what was received." *In re Mongelluzzi*, 587 B.R. 392, 404 (Bankr. M.D. Fla. 2018), *on reconsideration in part sub nom. In re Able Body Temp. Servs., Inc.*, 2018 WL 11206122 (Bankr. M.D. Fla. Sept. 4, 2018). In a Ponzi scheme, however, any transfers above the amount of principal in the form of false profits are deemed not to have been made for reasonably equivalent value. *Perkins*, 661 F.3d at 627. Moreover, Ponzi schemes are presumed to be insolvent. *Lee*, 753 F.3d at 1201 ("Since Ponzi schemes do not generate profits sufficient to provide their promised returns, but rather use investor money to pay returns, they are insolvent and become more insolvent with each investor payment.").

Here, it is averred in the complaint that neither the Insiders nor the EquiAlt Entities obtained reasonably equivalent value in exchange for the monetary transfers to the defaulted Defendants. (Doc. 1 at ¶ 204); *see Perkins*, 661 F.3d at 627. And it is further alleged that the Insiders operated the EquiAlt Entities as a Ponzi scheme (Doc. 1 at ¶¶ 5, 8, 152, 159, 170, 176), which—as noted—is presumed to be insolvent, *Lee*, 753 F.3d at 1201. Accordingly, Wiand is entitled to a default judgment on his claim for constructive fraud.

As referenced previously, Wiand seeks a default judgment on his alternative claim for unjust enrichment as well. (Doc. 495 at 23). Florida law requires that to

establish such a claim, a plaintiff must show that "(1) [it] has conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022) (citing *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012)). Applying these elements in the context of a receivership case, courts have found that a "[P]onzi scheme operator removes assets from the receivership entities for an unauthorized purpose, and thus, injures the entities." *Wiand v. EFG Bank*, 2012 WL 750447, at *7 (M.D. Fla. Feb. 8, 2012) (citation omitted), *report and recommendation adopted*, 2012 WL 760305 (M.D. Fla. Mar. 7, 2012)).

In this case, Wiand alleges that the EquiAlt entities conferred a benefit in the form of false profits on the defaulted Defendants, that these Defendants voluntarily accepted and retained the benefit (i.e., false profits), and that it is inequitable for the defaulted Defendants to retain the false profits at the expense of the EquiAlt Entities and the Receiver. (Doc. 1 at ¶¶ 192–196, 207–213). In light of these averments, a default judgment on Wiand's unjust enrichment claim is supported. *Omnipol*, 32 F.4th at 1308.

### C.

With respect to the final item of damages, Wiand attaches to his complaint spreadsheets describing the transfers by date and amount to each Defendant. (Doc. 1-1). Wiand also includes with his motion a table listing these false profits, as well as

pre-judgment interest through November 22, 2023, and the applicable per diem rate as to each defaulted Defendant.[9] (Doc. 495-1 at ¶ 10). This evidence amply substantiates the amount of the requested judgments against these Defendants. I therefore find that the Receiver should be awarded the return of the defaulted Defendants' false profits, plus pre-judgment and post-judgment interest, as set forth in Wiand's motion.

### III.

Based upon the foregoing, I respectfully recommend that the Court:

1. Grant *Plaintiff Receiver [Burton W. Wiand]'s Second Renewed Omnibus Motion for Default Judgment against Defaulted Defendants* (Doc. 495); and

2. Direct that the Clerk of Court enter a default judgment as to all counts of the complaint in favor of Wiand against the defaulted Defendants identified in the table attached to Wiand's motion for the amounts specified in the table. *See* (Doc. 495-1 at 15–16).

Respectfully submitted this 19th day of January 2024.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

---

[9] A receiver like Wiand may recover pre-judgment interest in actions like this one. *See Lee*, 753 F.3d at 1205 ("The general rule is that pre[-]judgment interest is an element of pecuniary damages, and Florida courts have awarded pre[-]judgment interest on FUFTA claims and on unjust enrichment claims as a matter of course.") (citations and footnote omitted).

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable John L. Badalamenti, United States District Judge
Counsel of record
*Pro se* Defendants